UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JASON KRON                                                          CIVIL ACTION

VERSUS                                                              NO. 10-518

ROBERT C. TANNER, WARDEN, ET AL.                                    SECTION "F"(3)

**PARTIAL REPORT AND RECOMMENDATION**

Plaintiff, Jason Kron, a state prisoner, filed this civil rights action pursuant to 42 U.S.C. § 1983. In the original complaint, he named the following defendants: Robert C. Tanner, the warden of the B.B. "Sixty" Rayburn Correctional Center; Dr. Dennis LaRavia, a physician at that facility; and James M. LeBlanc, the Secretary of the Louisiana Department of Public Safety and Corrections. Plaintiff claimed that the defendants failed to protect him from violence at the hands of other inmates and failed to provide him with adequate medical care.[1] Plaintiff subsequently filed an amended complaint, adding excessive force claims against two new defendants, Officer David Alford and Lieutenant Ronnie Seal.[2]

---

[1] Rec. Doc. 2.

[2] Rec. Doc. 16.

Due to the rambling nature of plaintiff's complaint, the Court ordered him to file a concise Statement of Facts in support of his claims.[3] The Court also ordered Warden Tanner to submit the following records for the Court's review: (1) plaintiff's medical records from the prison; (2) all notifications, complaints, and grievances plaintiff submitted to prison officials concerning his purported enemies at the prison and his need for protection; and (3) all of plaintiff's disciplinary records, including appeals and responses, relating to incidents of fighting or other violence.[4] The Statement of Facts and the prison records have been filed into this federal record.[5]

## I. Standards of Review

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> > (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

---

[3] Rec. Doc. 7.

[4] Rec. Doc. 6.

[5] Rec. Docs. 12 and 27.

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
>     (i) is frivolous or malicious;
>     (ii) fails to state a claim on which relief may be granted; or
>     (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re* Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted). The United States Supreme Court recently explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted

3

unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citations and quotation marks omitted).

Although broadly construing the original and amended complaints,[6] the Court nevertheless finds that, for the following reasons, many of plaintiff's claims must be dismissed as frivolous, for failure to state a claim on which relief may be granted, and/or for seeking monetary damages against a defendant who is immune from such relief.

## II. Official-Capacity Claims

To the extent that plaintiff is seeking monetary damages against the defendants in their official capacities, those claims must be dismissed for the following reasons.

Defendants Tanner, LaRavia, Alford, and Seal are employed at the B.B. "Sixty" Rayburn Correctional Center. They, along with defendant LeBlanc, are officials or employees of the Louisiana Department of Public Safety and Corrections. See, e.g., Tyson v. Reed, Civ. Action No. 09-7619, 2010 WL 360362, at *4 (E.D. La. Jan. 21, 2010); Searls v. Louisiana, Civ. Action No. 08-4050, 2009 WL 653043, at *6 (E.D. La. Jan. 21, 2009); Demouchet v. Rayburn Correctional Center, Civ. Action No. 07-1694, 2008 WL 2018294, at *3 (E.D. La. May 8, 2008). State officials and employees sued in their official capacities for monetary damages are not "persons" subject to suit under 42 U.S.C. § 1983. Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989); Stotter v. University of Texas, 508 F.3d 812, 821 (5th Cir. 2007); American Civil Liberties Union

---

[6] The court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

v. Blanco, 523 F.Supp.2d 476, 479 (E.D. La. 2007); Tyson, 2010 WL 360362, at *4; Searls, 2009 WL 653043, at *6; Demouchet, 2008 WL 2018294, at *3.

Moreover, the official-capacity claims also fail for an additional reason. Because a claim against a state official or employee in his official capacity for monetary damages is actually a claim against the state itself, such claims are barred by the Eleventh Amendment. Williams v. Thomas, 169 Fed. App'x 285, 286 (5th Cir. 2006); Tyson, 2010 WL 360362, at *4; Searls, 2009 WL 653043, at *6; Demouchet, 2008 WL 2018294, at *3.

As to plaintiff's federal claims against the defendants in their individual capacities or in any capacity for injunctive or declaratory relief,[7] many of those claims should be dismissed as frivolous and for otherwise failing to state a claim on which relief may be granted for the following reasons.

### III. Failure-to-Protect Claims

Plaintiff claims that defendants LeBlanc, Tanner, Alford, and Seal failed to protect him from being attacked by other inmates. The United States Supreme Court has noted:

> [A]s the lower courts have uniformly held, and as we have assumed, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course. Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards

---

[7] A state official or employee sued in his official capacity is considered a "person" with respect to a § 1983 claim for relief which is declaratory or injunctive in nature and prospective in effect. Stotter, 508 F.3d at 821; American Civil Liberties Union, 523 F.Supp.2d at 479. Further, the Eleventh Amendment does not bar such a claim. Aguilar v. Texas Department of Criminal Justice, 160 F.3d 1052, 1054 (5th Cir. 1998).

5

> of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

Farmer v. Brennan, 511 U.S. 825, 833-34 (1994) (citations, footnote, quotation marks, ellipsis, and brackets omitted).

That said, "[i]t is not ... every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834. Rather, to establish a failure-to-protect claim under § 1983, a prisoner must make two showings. First, he " must show that he was incarcerated under conditions posing a *substantial* risk of *serious* harm." Id. (emphasis added). Second, he must show that the prison officials sued had a "sufficiently culpable state of mind." Id. (quotation marks omitted). Therefore, it must be shown that those officials were "*deliberately indifferent* to [the prisoner's] need for protection." Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) (emphasis added). The United States Fifth Circuit Court of Appeals has explained:

> An official acts with the requisite deliberate indifference if he is aware of an *excessive risk* to inmate safety and *disregards* that risk. In this context, an officer's awareness of the risk is evaluated subjectively. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and must in fact also have drawn the inference. No liability exists, however, if an official reasonably responded to a known substantial risk, even if the harm was ultimately not averted.

Longoria v. Texas, 473 F.3d 586, 592-93 (5th Cir. 2006) (emphasis added; citations, quotation marks, brackets, and ellipsis omitted). Further, "[d]eliberate indifference must be viewed from [the official's] perspective at the time in question, not with hindsight's perfect vision." Jackson v. Everett, 140 F.3d 1149, 1152 (8th Cir. 1998); Morrison v. Gusman, Civ. Action No. 10-217, 2010 WL 724173, at *6 n.9 (E.D. La. Feb. 22, 2010); Bland v. Terrebonne Parish Criminal Justice

Complex, Civ. Action No. 09-4407, 2009 WL 3486449, at *6 (E.D. La. Oct. 23, 2009). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." Thompson v. Upshur County, Texas, 245 F.3d 447, 459 (5th Cir. 2001).

In his Statement of Facts, plaintiff alleges that the defendants failed to protect him from the following incidents:

| | | |
|---|---|---|
| 1. May 2, 2008: | | Inmate Ali Barconey punched and hit plaintiff in the back of the head with a metal object.[8] |
| 2. May 14, 2008: | | Inmate Kumoul Jackson threw ice at plaintiff.[9] |
| 3. May 15-31, 2008: | | Kumoul Jackson threw bars of soap and food at plaintiff.[10] |
| 4. May or June, 2008: | | Ali Barconey threw a bar of soap at plaintiff.[11] |
| 5. Nov. 16-17, 2008: | | Inmate Casie Morrison punched plaintiff in the face several times.[12] |
| 6. Dec. 1-4, 2008: | | Inmate Dave Edwards spat in plaintiff's face.[13] |

---

[8] Rec. Doc. 12, pp. 1-2.

[9] Rec. Doc. 12, pp. 3-4.

[10] Rec. Doc. 12, p. 4.

[11] Rec. Doc. 12, pp. 4-5.

[12] Rec. Doc. 12, p. 5.

[13] Rec. Doc. 12, p. 6.

7. Dec. 31, 2008:	Inmate Claude Dillon threw urine into plaintiff's cell.[14]

8. July 7, 2009:	Inmate Roscoe Medius punched and spat at and plaintiff.[15]

9. July 29, 2009:	Inmate Antonio Williams punched plaintiff several times.[16]

Many of those incidents are of no moment with respect to plaintiff's failure-to-protect claim. Specifically, the second, third, fourth, and seventh incidents, which involved the throwing of ice, soap bars, food, and urine, while clearly annoying, did not pose substantial risk of *serious* harm. The same is true of the sixth incident involving spitting. See Shaw v. Breen, No. 08-cv-490, 2008 WL 4279650, at *2 (W.D. Wis. Sept. 16, 2008); Hall v. Pennington, No. Civ. 06-264, 2006 WL 2223979, at *2 (D. Del. Aug. 2, 2006); Wolfgang v. Pennsylvania Department of Corrections, No. 4:CV-02-1680, 2006 WL 709402, at *9 (M.D. Pa. Mar. 20, 2006).

When those incidents are disregarded, only four incidents remain: the alleged attacks by Ali Barconey on May 2, 2008, Casie Morrison on Nov. 16-17, 2008, Roscoe Medius on July 7, 2009, and Antonio Williams on July 29, 2009. Assuming that those attacks posed a substantial risk of serious harm to plaintiff, the Court must consider whether the allegations are sufficient to state a

---

[14] Rec. Doc. 12, pp. 6-7.

[15] Rec. Doc. 12, pp. 7-8.

[16] Rec. Doc. 12, p. 9.

claim that defendants LeBlanc and Tanner were deliberately indifferent to plaintiff's need for protection from that harm. They clearly are not.[17]

In his Statement of Facts, plaintiff indicates that he first notified LeBlanc of the safety issues in an administrative grievance he filed against Tanner on December 10, 2009.[18] That grievance was submitted long *after* the alleged attacks. Accordingly, there is no evidence that LeBlanc had *prior* knowledge of any dangers allegedly posed to plaintiff by Barconey, Morrison, Medius, or Williams. Without such prior notice, the claim fails because LeBlanc cannot be said to have been deliberately indifferent for failing to protect against a potential harm of which he was unaware. Farmer v. Brennan, 511 U.S. 825, 844 (1994); Bland v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 09-4407, 2009 WL 3486449, at *6 (E.D. La. Oct. 23, 2009).

Similarly, there is no indication that Tanner had any prior notice of the dangers. In his Statement of Facts, plaintiff states that he provided Tanner with several notices. However, those notices, recounted below, do not support the failure-to-protect claim.

---

[17] The Court notes that plaintiff alleges in the complaint that he also put other individuals on notice regarding the purported dangers. However, only LeBlanc and Tanner have been named as defendants with respect to these claims, and, therefore, the Court need consider only what they knew. Although LeBlanc and Tanner are supervisory officials, they cannot be held liable pursuant to 42 U.S.C. § 1983 under any theory of vicarious liability for the acts or failures of their subordinates. Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987); see also Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or *respondeat superior* liability.").

[18] Rec. Doc. 12, pp. 15-19; Rec. Doc. 12-1, pp. 58-60.

First, plaintiff states that he first advised Warden Tanner of the safety issues in the latter part of May of 2008.[19] However, that notice is of no relevance, in that it also was written *after* the incident with Barconey occurred and it made no mention of dangers allegedly posed by Morrison, Medius, or Williams.[20]

Second, plaintiff states that he wrote to Tanner in November of 2008 regarding placement in a cell with Morrison.[21] However, again, that notice was sent to Tanner *after* the incident in which plaintiff was punched by Morrison.[22] Moreover, plaintiff states that he was questioned about the

---

[19] Rec. Doc. 12, pp. 11-12.

[20] A copy of plaintiff's notice, which warns only of dangers posed by Ali Barconey and Kumoul Jackson, has been filed into this federal record. Moreover, in his response to that notice, Tanner notified plaintiff that he should follow the prison's security procedures if he believed he was in danger:

> You note in your letter that you are notifying me of your situation and that if you are "hurt again" it will "fall on" me. Although you allege in your letter that Inmate "Kamoul" has thrown "stuff" on you, has spit on you, and has generally been harassing you, you declined an opportunity today to file a formal request for protection offered by Major Leroy Graves. Now let me put you on notice that you are responsible for following our rules and procedures regarding protection. If you do not understand them, I suggest you speak to a security supervisor and request his/her assistance. Under no circumstances are you permitted to take matters into your own hands. In addition, attempts at coercing me or my staff to take a particular course of action will not be permitted and may result in your receiving disciplinary action.

Rec. Doc. 12-1, p. 19, Letter from Tanner to plaintiff dated May 28, 2008.

[21] Rec. Doc. 12, pp. 12-13.

[22] See Rec. Doc. 2, p. 22.

10

notice and "immediately" transferred into protective custody. Therefore, the notice clearly was not met with deliberate indifference on the part of prison authorities.

Third, plaintiff states that he wrote to Tanner in December of 2008 regarding dangers posed by "Ali Barconey and his friends."[23] Again, that notice was *after* the alleged attacks by Barconey and Morrison and made no mention of any danger posed by Medius or Williams.

Fourth, plaintiff states that he informed "classification" of a danger posed by Medius, his cellmate, on July 8, 2009.[24] However, that notice was likewise sent *after* the incident involving Medius.[25] Moreover, again, the notice was not met with deliberate indifference; rather, plaintiff was questioned regarding the notice and, in response, officials moved Medius to another cell. Additionally, the notice made no mention of any danger posed by Williams.

In light of the foregoing, there is no evidence that either LeBlanc or Tanner had *prior* warning of the dangers posed to plaintiff by Barconey, Morrison, Medius, or Williams. Moreover, as noted, prison officials did not disregard plaintiff's complaints regarding his safety. On the contrary, he was told that he simply must follow the prison rules regarding requests for protection and, when he did so, his concerns were in fact addressed.

Lastly, with respect to these claims, the Court believes two other observations are in order.

First, it is clear from the record that the true crux of plaintiff's discontent is that prison officials would not transfer him from a facility where he was unhappy, the B.B. "Sixty" Rayburn

---

[23] Rec. Doc. 12, p. 13.

[24] Rec. Doc. 12, p. 14.

[25] See Rec. Doc. 2, p. 24.

Correctional Center, to one he believed he would prefer, the Elayn Hunt Correctional Center. However, prison officials have no obligation to accommodate such inmate preferences. Rather, placement of state prisoners is a matter left to the discretion of state officials, and a prisoner has no constitutional right springing from the Constitution itself or from any protected liberty or property interest arising from state law to be housed in any particular facility or to be transferred from one prison facility to another, even if life in one prison may be much more disagreeable than in another. Olim v. Wakinekona, 461 U.S. 238, 245-46 (1983); Montanye v. Haymes, 427 U.S. 236, 242 (1976); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996); Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995); Jackson v. Cain, 864 F.2d 1235, 1250 (5th Cir. 1989); Maddox v. Thomas, 671 F.2d 949, 950 (5th Cir. 1982); Davis v. St. Charles Parish Correctional Center, Civ. Action No. 10-98, 2010 WL 890980, at *3 (E.D. La. Mar. 8, 2010); Oatis v. St. Tammany Parish Sheriff's Office, Civ. Action No. 09-6266, 2009 WL 3566120, at *3 (E.D. La. Oct. 29, 2009); George v. Travis, Civ. Action No. 07-986, 2007 WL 1428744, at *8 n.12 (E.D. La. May 10, 2007).

Second, the Court notes that plaintiff seems to believe that prison officials have a constitutional duty to guarantee his absolute safety. They most assuredly have no such obligation. On the contrary, the Eighth Amendment mandates only "reasonable" safety in prisons. Verrette v. Randolph, Civ. Action No. 08-1200, 2009 WL 103715, at *4 (E.D. La. Oct. 22, 2008) (Shushan, M.J.) (adopted by Feldman, J., on Jan. 13, 2009); Wolters v. Federal Bureau of Prisons, No. 08-CV-0837, 2008 WL 4558346, at *2 (W.D. La. Sept. 19, 2008) (Kirk, M.J.) (adopted by Drell, J., on

October 9, 2008), <u>vacated in part on other grounds</u>, 352 Fed. App'x 926 (5th Cir. 2009). Further, to require "absolute" safety would ask the impossible of prison administrators:

> [I]t is doubtful that inmate against inmate violence can ever be prevented within a prison setting no matter how carefully a prison might be operated. Courts must comprehend the magnitude of the prison administrators' problem and recognize the distinctly unique situation caused by confining human beings in a tension-filled atmosphere. Inmate assaults upon inmates are not unusual in the best run prisons.

<u>Campbell v. Anderson</u>, 335 F.Supp. 483, 486 (D. Del. 1971); <u>see also</u> <u>Farmer</u>, 511 U.S. at 858-89 (Thomas, J., concurring) (noting that "[p]risons are necessarily-dangerous places" which "house society's most antisocial and violent people in close proximity with one another" and that "some level of brutality ... among prisoners is inevitable no matter what the guards do unless all prisoners are locked in their cells 24 hours a day and sedated") (quotation marks, brackets, and ellipsis omitted). Indeed,

> [t]his is often the predicament confronting prison officials who must serve as referees, as well as custodians, over incarcerated individuals who are not known for their civility or their ability to negotiate amicably or reasonably with other individuals. Every day prison officials must make decisions as to whether a dispute between two prisoners is a genuine threat to their safety or merely a routine dispute that will soon be forgotten. Sometimes, an official makes an incorrect assessment regarding the seriousness of the situation and someone gets hurt; however, the official is entitled to qualified immunity and cannot be held liable if he made a good faith error.

<u>McKnight v. Livingston</u>, Civ. Action No. H-06-3674, 2007 WL 221926, at *2 (S.D. Tex. Jan. 25, 2007) (citations omitted).

## IV. Medical Claim

Plaintiff's next claim is that he was denied adequate medical care by Dr. LaRavia.[26] Specifically, plaintiff recounts two unsatisfactory visits with Dr. LaRavia.

The first of those visits took place on November 18, 2009. According to the medical records concerning that visit, plaintiff complained of numerous ailments, including pain when urinating, a toenail fungus, a knot on his head, a lump on his left arm, dry skin, pain in his chest, warts on his penis, and nasal congestion. It was also noted that he had a history of seizures and ulcerative colitis. He additionally requested that he be given Ensure, a nutritional supplement. He was examined and his complaints were assessed. Thereafter, Dr. LaRavia issued various orders to address plaintiff's concerns. Specifically, Dr. LaRavia ordered that plaintiff be given the following treatments: (1) one can of Ensure twice per day for one year; (2) Asacol three times per day for one year;[27] (3) application of moist heat to his chest three times per day for five days; (4) freezing of the warts; (5) minor surgery for the toenail complaints; (6) nasal salve twice per day for six months; (7) Nasacort nasal spray daily for six months; (8) Nizoral shampoo weekly for three months; and (9) lubricating lotion twice per day for six months.

The second visit took place on January 13, 2010. Plaintiff states that, during that visit, Dr. LaRavia decided not to perform the toenail surgery after concluding that it would not correct the problem. The medical records from that visit also reflect that Dr. LaRavia considered and addressed

---

[26] In the complaint, plaintiff mentions other individuals when recounting his attempts to secure medical care. However, he has named only Dr. LaRavia as a defendant with respect to this claim. Accordingly, the Court need consider only the allegations against that defendant.

[27] Asacol is used to treat ulcerative colitis.

14

plaintiff's numerous other complaints and adjusted his treatment plan. Specifically, Dr. LaRavia ordered: (1) the scheduling of blood work; (2) an increase in the Asacol to four times per day for three months; (3) Amitriptyline nightly for three months;[28] (4) the scheduling of liver function tests; (5) Cetaphil lotion twice a day for six months; (6) Triamcinolone twice per day for three months;[29] (7) increased water intake; (8) the scheduling of surgery to remove the mass on plaintiff's arm;[30] (9) one can of Ensure twice per day for six months; and (10) daily walking.

It is clear that a prisoner's constitutional rights may be violated if his serious medical needs are met with deliberate indifference on the part of penal authorities. Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999). However, even if the Court assumes for the purposes of this decision that plaintiff's medical needs were sufficiently serious to trigger constitutional protections, it is evident that Dr. LaRavia was not deliberately indifferent to those needs.

The United States Fifth Circuit Court of Appeals has held:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

---

[28] Amitryptyline is an antidepressant.

[29] Triamcinolone is a steroid used to skin conditions and other ailments.

[30] The medical records reflect that this surgery was subsequently performed on February 10, 2010.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

The medical records in the instant case clearly show that Dr. LaRavia did not ignore plaintiff's numerous medical complaints; on the contrary, Dr. LaRavia ordered medical tests, performed minor surgery, and prescribed various medications to address plaintiff's array of ailments. Those medical records disprove any allegation that he was deliberately indifferent to plaintiff's medical needs. See Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference."). The fact that plaintiff allegedly continued to experience pain despite treatment is insufficient to state a constitutional claim. Williams v. Chief of Medical Operations, Tarrant County Jail, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994); see also Spruill v. Gillis, 328 Fed. App'x 797, 801 (3rd Cir. 2009).

It is evident that plaintiff was dissatisfied and disagreed with his medical treatment, especially the decision not to send him to outside specialists or to take x-rays or other types of medical scans. However, that does not make his claims actionable. As the United States Fifth Circuit Court of Appeals has held: "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment." Gobert v. Caldwell, 463

F.3d 339, 346 (5th Cir. 2006) (footnote and quotation marks omitted). Dr. LaRavia's decisions in this case were clearly based on his professional judgment, and, as such, are not lightly second-guessed in a federal civil rights action. See Estelle v. Gamble, 429 U.S. 97, 107 (1976) ("[T]he question of whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment."). The same is true regarding his decision that plaintiff should be treated in the jail medical department rather than by outside medical providers. See Alfred v. Texas Department of Criminal Justice, 80 Fed. App'x 926, 927-28 (5th Cir. 2003); see also Fowler v. Hodge, 94 Fed. App'x 710, 713 (10th Cir. 2004).

Simply put, the determinative issue is not whether plaintiff was satisfied with his care but instead whether Dr. LaRavia acted with deliberate indifference. It is clear that there was no deliberate indifference in this case, and the claim against Dr. LaRavia should therefore be dismissed.

## V. Excessive Force Claims

Lastly, in his amended complaint, plaintiff claims that excessive force was used against him by Officer David Alford and/or Lieutenant Ronnie Seal on two occasions.[31] Without question, it is unconstitutional for a prison guard to use excessive force against an inmate. However, the United States Supreme Court has explained: "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry

---

[31] Although it is not entirely clear from plaintiff's amended complaint, it appears that he may also mean to assert a failure-to-protect claim against Seal. However, if that is plaintiff's intent, the claim is frivolous. Plaintiff identifies only one incident which occurred after Seal was notified of the need for protection, and that incident involved nothing more than inmate David Nelson spitting on plaintiff. As previously noted, the failure to protect plaintiff from such an incident did not expose him to a substantial risk of serious harm.

17

is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6 (1992) (quotation marks omitted). Only in the latter instance will the force be considered unconstitutionally excessive.

Concerning the first occasion, plaintiff contends that he was handcuffed too tightly by Alford on March 3, 2010. It is alleged that Alford came to plaintiff's cell to escort him outdoors for exercise. Plaintiff states:

> Plaintiff stretched his wrist through the tray slot to be cuffed. Sgt. Alford puts the cuffs on plaintiffs wrist and closed them to tight. The cuffs wedged into plaintiffs flesh cutting his circulation off. Plaintiff immediately informed Sgt. Alford that the cuffs are way to tight and to please loosen the cuffs because they are hurting me.[32]

When plaintiff complained, Alford immediately removed the cuffs and told plaintiff he would not be taken outside.

Those allegations fail to state an excessive force claim. There is simply no evidence that Alford intentionally placed the handcuffs on too tight, and he immediately removed them when plaintiff complained. Moreover, even if it could be shown that Alford was intentionally rough with plaintiff, his claim still would not be actionable. As the United States Supreme Court recently reiterated:

> [N]ot every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.

---

[32] Rec. Doc. 16, p. 5.

18

Wilkins v. Gaddy, 130 S.Ct. 1175, 1178 (2010) (citation and quotation marks omitted). The facts recounted by plaintiff regarding this incident, even if true, simply do not indicate an unconstitutional use of force.

The second occasion occurred the following day. In that incident, plaintiff was engaged in a verbal confrontation with another inmate while exercising outside. Due to that altercation, plaintiff was escorted back to his cell by Alford and Seal. Plaintiff alleges that, during the escort, the officers squeezed his arm so hard that a surgical incision burst open, forced him to walk so fast that his shackles were slamming into his shins and Achilles tendons, and repeatedly yanked his handcuffs so as to cut his wrists and cause his face and body to slam into his cell bars. Those allegations are sufficient to state an excessive force claim, and the Court cannot say that the claim is frivolous. Accordingly, at least at this point, the claims arising from the March 4 incident should be allowed to proceed.

## RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's official-capacity claims be **DISMISSED WITH PREJUDICE**.

It is **FURTHER RECOMMENDED** that all of plaintiff's individual-capacity claims be **DISMISSED WITH PREJUDICE**, except for the individual-capacity claims against David Alford and Ronnie Seal concerning the use of excessive force on March 4, 2010.

It is **FURTHER RECOMMENDED** that the individual-capacity claims against David Alford and Ronnie Seal concerning the use of excessive force on March 4, 2010, be allowed to proceed pending further review.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[33]

New Orleans, Louisiana, this nineteenth day of May, 2010.

_____
**DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE**

---

[33] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.